**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------

SHIVA STEIN,                                          :
                                                      :
        Plaintiff,          :   Civil Action No. 1:21-cv-6586
                                                      :
v.                                                    :
                                                      :   **COMPLAINT FOR VIOLATIONS OF**
QAD INC., PETER R. VAN CUYLENBURG,   :   **SECTIONS 14(a) AND 20(a) OF THE**
ANTON CHILTON, PAMELA M. LOPKER,     :   **SECURITIES EXCHANGE ACT OF**
SCOTT J. ADELSON, and KATHY          :   **1934**
CRUSCO,                                               :
                                                      :   **JURY TRIAL DEMANDED**
        Defendants.      :
-----------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against QAD Inc. ("QAD or the "Company")

and the members QAD board of directors (the "Board" or the "Individual Defendants" and

collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a)

of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed

acquisition of QAD by affiliates of Thoma Bravo L.P. ("Thoma Bravo").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on August 2, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction

whereby Project Quick Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Project Quick Parent, LLC ("Parent"), will merge with and into QAD with QAD surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction"). Both Merger Sub and Parent are affiliated with Thomas Bravo.  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each QAD common share issued and outstanding will be converted into the right to receive $87.50 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked QAD stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to QAD stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Innisfree M&A Incorporated, QAD's proxy solicitor, is headquartered in this District; and because QAD trades on the NASDAQ stock exchange, also headquartered in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of QAD Class B common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Peter R. van Cuylenburg has served as a member of the Board since November 1997 and is the Chairman of the Board.

11.     Individual Defendant Anton Chilton has served as a member of the Board since December 2018 and is the Company's Chief Executive Officer.

12.     Individual Defendant Pamela M. Lopker founded the Company in 1979 and has served as a member of the Board since its inception in 1986, and as President since that time.

13.     Individual Defendant Scott J. Adelson has served as a member of the Board since April 2006.

3

14.     Individual Defendant Kathy Crusco has served as a member of the Board since December 2019.

15.     Defendant QAD is incorporated in Delaware and maintains its principal offices at 100 Innovation Place, Santa Barbara California 93108.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "QADA" and "QADB."

16.     The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

18.     QAD, together with its subsidiaries, provides cloud-based enterprise software solutions in North America, Europe, the Middle East, Africa, the Asia Pacific, and Latin America. The Company offers effective enterprise management software products, including financials, internationalization, cloud EDI, EDI eCommerce, and e-invoicing solutions; digital manufacturing software products, which include manufacturing, production execution, enterprise asset management, automation, and enterprise quality management system solutions; and complete customer management software products comprising customer and service management, customer self service, configurator, trade activity management, CRM, and field service management solutions. It also provides integrated supplier management software products that include supplier portal, precision global trade transportation execution, supplier management, and sourcing services; and connected supply chain software products that comprise supply chain and digital supply chain planning solutions. In addition, the Company offers customer support and product update services, as well as professional services, including consulting, deployment, training,

technical development, and integration. It markets its products through direct and indirect sales channels; and distributors and sales agents. The Company serves automotive, life sciences, consumer products, food and beverage, high technology, and industrial products manufacturing companies. QAD was founded in 1979 and is headquartered in Santa Barbara, California.

19.     On June 28, 2021, QAD announced that it had entered into a proposed transaction with Thoma Bravo:

> SANTA BARBARA, Calif.--(BUSINESS WIRE)--QAD Inc. (Nasdaq: QADA) (Nasdaq: QADB), a leading provider of next-generation manufacturing and supply chain solutions in the cloud, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading private equity investment firm focused on the software and technology-enabled services sector, in an all-cash transaction with an equity value of approximately $2 billion. Under the terms of the agreement, QAD shareholders will receive $87.50 per share of Class A Common Stock or Class B Common Stock in cash.
>
> Upon completion of the transaction, QAD will become a private company with the flexibility to continue investing in the development and deployment of Enterprise Resource Planning (ERP) software and related enterprise software for manufacturing companies around the world. Anton Chilton will continue to lead QAD as CEO, and the Company will maintain its headquarters in Santa Barbara, California.
>
> "Today's announcement, which is the culmination of a comprehensive process, represents a compelling opportunity to build on QAD's impressive legacy and strong momentum while maximizing value for shareholders," said Mr. Chilton. "Thoma Bravo has a deep appreciation for the world-class team, reputation and portfolio we have built at QAD, and with their strong support we are excited to take our business to the next level. As a private company owned by Thoma Bravo, we will have enhanced flexibility, focus and resources to invest in – and capitalize on – our expanding growth opportunities, and help our customers thrive in an increasingly dynamic manufacturing environment."
>
> "Over the past four decades, we've grown QAD from a locally sourced, one-person start-up to a leading, trusted global provider of ERP solutions. Today we are beginning our next chapter of growth,"

said QAD Founder and President Pamela Lopker. "Since QAD's founding in 1979, our customers, our technology and the manufacturing industry have evolved significantly – and, at every step, QAD has adapted swiftly to maintain and build our leadership position. Global manufacturers are facing ever-increasing challenges, and we are pleased that our customers around the world can continue to rely on QAD's next generation solutions to keep pace with emerging business disruptors. Through this partnership, we will be even better positioned to build on our strong foundation and enhance our value proposition."

"For more than a decade, we have admired QAD's unparalleled history of delivering innovative solutions focused on the needs of global manufacturers," said Scott Crabill, a Managing Partner at Thoma Bravo. "As the pace of change continues to accelerate and supply chains become more complex, we are committed to supporting QAD in delivering its vision and ensuring the Company is well equipped to further expand its reach and portfolio. We look forward to partnering with Anton and his team to cement the Company's positioning as the intelligent, agile, and innovative partner of choice for Adaptive Manufacturing Enterprises."

Peter Stefanski, a Principal at Thoma Bravo, added, "Thoma Bravo has a strong track record of helping enterprise software businesses evolve their platforms to meet the needs of clients and we are excited about QAD's future given its exceptional foundation and history. We will plan to leverage our deep expertise in software to support the Company's talented team to further the journey to SaaS and to drive sustainable long-term growth both organically and through M&A."

**Approvals and Timing**

The QAD Board of Directors formed a Special Committee composed entirely of independent directors to conduct a robust process and negotiate the transaction with the assistance of independent financial and legal advisors. Following the Special Committee's unanimous recommendation, members of the QAD Board other than Ms. Lopker, who recused herself, unanimously approved the merger agreement with Thoma Bravo, and recommend that QAD shareholders adopt and approve the merger agreement and the transaction.

The transaction is expected to close in the fourth quarter of 2021, subject to the satisfaction of customary closing conditions, including

the approval of owners of the majority of QAD shares not held by Ms. Lopker, her affiliates and other directors and officers of the Company. Following closing of the transaction, Ms. Lopker intends to retain a significant ownership interest in the Company and will continue to serve on the QAD Board.

**Advisors**

Morgan Stanley & Co. LLC is serving as financial advisor to QAD's Special Committee, and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as the Special Committee's legal counsel. Moelis & Company LLC is serving as financial advisor and Paul Hastings LLP is serving as legal counsel to Ms. Lopker.

Barclays is serving as financial advisor and Kirkland & Ellis LLP is serving as legal counsel to Thoma Bravo.

\* \* \*

20.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that QAD's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

21.     On August 2, 2021, QAD filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections

14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning QAD Financial Projections*

22.     The Proxy Statement fails to provide material information concerning financial

projections by QAD management and relied upon by Morgan Stanley in its analysis. The Proxy

Statement discloses management-prepared financial projections for the Company which are

materially misleading. The Proxy Statement indicates that in connection with the rendering of its

fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company

Projections") and provided them to the Board and the financial advisors with forming a view about

the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails

to provide, certain information in the projections that QAD management provided to the Board

and the financial advisors. Courts have uniformly stated that "projections … are probably among

the most highly-prized disclosures by investors. Investors can come up with their own estimates

of discount rates or [] market multiples. What they cannot hope to do is replicate management's

inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d

171, 201-203 (Del. Ch. 2007).

23.     For the Company Projections, the Proxy Statement provides values for non-GAAP

(Generally Accepted Accounting Principles) financial metric: Adjusted EBITDA, but fails to

provide line items used to calculate the metric and/or a reconciliation of the non-GAAP metric to

its most comparable GAAP measure, in direct violation of Regulation G and consequently Section

14(a).

24.     When a company discloses non-GAAP financial measures in a Proxy Statement

that were relied on by a board of directors to recommend that stockholders exercise their corporate

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates,

also disclose all projections and information necessary to make the non-GAAP measures not

misleading, and must provide a reconciliation (by schedule or other clearly understandable

method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with

GAAP. 17 C.F.R. § 244.100.

25.     The SEC has noted that:

> companies should be aware that this measure does not have a
> uniform definition and its title does not describe how it is calculated.
> Accordingly, a clear description of how this measure is calculated,
> as well as the necessary reconciliation, should accompany the
> measure where it is used. Companies should also avoid
> inappropriate or potentially misleading inferences about its
> usefulness. For example, "free cash flow" should not be used in a
> manner that inappropriately implies that the measure represents the
> residual cash flow available for discretionary expenditures, since
> many companies have mandatory debt service requirements or other
> non-discretionary expenditures that are not deducted from the
> measure.[1]

26.     Thus, to cure the Proxy Statement and the materially misleading nature of the

forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable

GAAP measure to make the non-GAAP metric included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Morgan Stanley's Financial Analysis*

27.     With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy

Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by

Morgan Stanley in the analysis; and (ii) the inputs and assumptions underlying the representative

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April
4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

ranges of (a) aggregate value to estimated revenue multiples and (b) aggregate value to estimated

EBITDA multiples.

28.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy

Statement fails to disclose: (i) the inputs and assumptions underlying the selected AV/Estimated

Revenue Multiples ranges; (ii) net cash of the Company; (iii) the estimated fully diluted shares

outstanding; and (iv) the inputs and assumptions underlying the discount rate of 8.1%; (v) QAD's

estimated cost of equity.

29.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for the

Company, the Proxy Statement also fails to disclose: (i) the unlevered free cash flows for the

Company as calculated by Morgan Stanley and values of all line items used to calculate the

unlevered free cash flows; (ii) the projected terminal values for the Company; (iii) the inputs and

assumptions underlying the use of perpetuity growth rates of 2.0% to 3.0%; (iv) the inputs and

assumptions underlying the range of discount rates ranging from 7.1% to 9.1%; (v) net cash of the

Company; and (vi) net present value of net operating losses of the Company.

30.     With respect to Morgan Stanley's *Selected Transactions Analysis* for the Company,

the Proxy Statement fails to disclose: (i) the announcement date of each transaction; and (ii) the

aggregate value of each transaction.

31.     With respect to Morgan Stanley's *Illustrative Precedent Premiums* analysis, the

Proxy Statement fails to disclose the implied premium of each transaction observed.

32.     In sum, the omission of the above-referenced information renders statements in the

Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Morgan Stanley and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

38.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of QAD within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of QAD, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed

with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of QAD, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of QAD, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants

jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents,

employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the

material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of

the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result

of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and

proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: August 4, 2021                              **MELWANI & CHAN LLP**

                                        By:   /s *Gloria Kui Melwani*
                                              Gloria Kui Melwani (GM5661)
                                              1180 Avenue of Americas, 8th Fl.
                                              New York, NY 10036
                                              Telephone: (212) 382-4620
                                              Email: gloria@melwanichan.com

                                              *Attorneys for Plaintiff*

15